UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARL P. HOFF, Trustee of the Carl
P. Hoff Trust
        Plaintiff,

v.

PACIFIC NORTHERN ENVIRONMENTAL
CORP., a Delaware corporation, dba
COWLITZ CLEAN SWEEP; and UNITED
STATES OF AMERICA,
        Defendants.

Civil No. 05-1376-HU

O R D E R

HAGGERTY, Chief Judge:

    This is a maritime negligence action arising out of a joint salvage operation of plaintiff's ship, the *Enola M*, that was conducted by defendants Pacific Northern Environmental Corp., dba Cowlitz Clean Sweep (CCS), and the United States Coast Guard (Coast Guard). Magistrate Judge Hubel has referred a Findings and Recommendation [52] to this court recommending that

1    - ORDER

defendant United States' Motion to Dismiss For Lack of Subject Matter Jurisdiction [26] should be denied, concluding that the discretionary function immunity exception does not bar suit against the United States.  Timely objections were filed by the United States [55].

When a party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Bus. Mach. Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).  The court has given the file of this case a *de novo* review, and has also carefully evaluated the Magistrate's Findings and Recommendation, the objections, response, and the record of the case.  The objections are denied, and the Findings and Recommendation is adopted.  The United States' request for oral argument is denied.

## BACKGROUND

Detailed accounts of the facts alleged in this matter are set forth in the Findings and Recommendation and the parties' briefing.  These alleged facts need be reviewed only briefly, and only where relevant, here.  On September 4, 2003, a fire broke out where the *Enola M* was moored, and it caught fire.  The mooring lines burned, and the vessel drifted downstream until it grounded.  Firefighters extinguished the fire by pumping water into the vessel, leaving the hull full of water.  Although the fire caused extensive damage, the *Enola M* retained substantial value since the seams and hull were not split.  Plaintiff's salvage contractor and the vessel's operator, Jerry Maher (Maher), developed a salvage plan.  They determined that the water should be removed before removing fuel to assure the stability of the vessel.  They had no concerns about oil leaking because there was no sheen on the water, and the fuel tanks were intact and sealed.

Coast Guard Chief Petty Officer Robin Klarmann arrived on the morning of September 4, 2006. She was accompanied by Petty Officer Lucia Mack (Mack), who she assigned to take command of the scene. Upon threat of a two million dollar fine, Mack told Maher to hire another salvage contractor, which was within her authority. She called CCS and asked it to "perform whatever actions the Coast Guard required." Mack testified that her main assignment was removing the fuel from the boat, but that she was not given instructions about whether the fuel should be removed before or after the water. Mack acknowledged that the water in the hull appeared to contain floating metal objects, but not oil. She admitted that she initially preferred to remove the water first because she was concerned that the sharp objects in the water might cause the vessel to sink, and that she spoke to "a lot of people" trying to figure out what to do because this differed from the usual situations to which the Coast Guard responded.

According to plaintiff, CCS's Mike Sasso (Sasso), recommended at least three ways to remove the water from the vessel: (1) pumping fire water overboard into the boom surrounding the vessel, where it would be contained; (2) pumping water into the fish hold, which would have placed the weight to the aft end of the vessel and stabilized it; or (3) evacuating fire water by a hose and pump system to a tanker truck which was on-scene and for which CCS was seeking a second pump. Mack allegedly decided to pump the fuel first, contrary to Sasso's advice.

Mack admitted that, on September 5, there seemed to be more water in the hull than had been present the day before. Mack thought that tidal fluctuation had caused water to enter the hull through the portholes. Mack and CCS considered going inside the vessel to fit patches over the burnt out and destroyed portholes to prevent water from entering the *Enola M*, but rejected

3    - ORDER

that alternative because of the safety threats presented by the debris floating inside the hull. While the fuel was being pumped, the *Enola M* began to list and take on water. Mack did not cease pumping the fuel because she thought that the vessel would settle deeper into the mud and "that would stabilize her." However, the *Enola M* continued to take on more water and ultimately sunk that afternoon. Plaintiff claims approximately $100,000 in damages for the lost salvage value and fees paid to CCS.

## ANALYSIS

Plaintiff has the burden of showing there are genuine issues of material fact as to whether the discretionary immunity exception applies, while the government bears the ultimate burden of establishing that the exception applies. *Miller v. United States*, 163 F.3d 591, 594 (9th Cir. 1998). Plaintiff's factual allegations are taken as true. *See Berkovitz v. United States*, 486 U.S. 531, 540 (1998).

The Findings and Recommendation summarized correctly the two-part test for whether the discretionary immunity exception requires dismissal of an admiralty suit against the United States. *See* Findings and Recommendation at 10-13. As the Findings and Recommendation acknowledged, discretionary immunity requires dismissal if the challenged conduct was: (1) discretionary in the sense that it was not governed by a mandatory statute, policy, or regulation, *and* (2) the type of action that Congress meant to protect – that is, it involved a decision susceptible to social, economic, or political policy analysis. Findings and Recommendation at 12-13; *see also United States v. Gaubert*, 499 U.S. 315, 322-25 (1991); *Berkovitz v. United*

*States*, 486 US 531, 536-37 (1988); *O'Toole v. United States*, 295 F.3d 1029, 1033-34 (9th Cir. 2002) (summarizing two-part test prescribed by Supreme Court).

The parties do not object to the Findings & Recommendation's conclusion that the challenged conduct was not governed by a mandatory statute, policy, or regulation. As noted above, this court need not perform a *de novo* review of those portions of the Findings and Recommendation to which no objections are filed. Accordingly, this court has confirmed that there is no clear error on the face of the record regarding whether the challenged conduct was discretionary, and adopts the conclusion of the Findings and Recommendation as it pertains to the first part of the test for discretionary immunity. *Campbell*, 501 F.2d at 206.

After conducting a *de novo* review of the record, this court finds that the Findings and Recommendation correctly concluded that the Coast Guard's conduct was not the type of action that Congress meant to protect because the challenged conduct was grounded in technical or scientific considerations rather than matters of social, economic, or political policy. Findings and Recommendation at 18-20. This court recognizes, as the Magistrate Judge did, that the discretionary immunity exception does not encompass all decisions involving discretion. Findings and Recommendation at 13; *see also Gaubert*, 499 U.S. at 323. As the Findings and Recommendation indicates, the exception typically does not cover governmental actions grounded in scientific and professional standards, since these decisions do not involve a weighing of policy considerations. Findings and Recommendation at 13-14; *see also Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) ("Decisions involving the application of

5      - ORDER

objective scientific standards are not insulated by the discretionary function exception . . . ");
*Bear Medicine v. United States*, 241 F.3d 1208, 1213 (9th Cir. 2001)  ("[F]ailure to adhere to accepted professional standards is not susceptible to a policy analysis.").

The United States objects that Mack's conduct was driven by safety considerations, a policy mandated by the applicable regulations.  *See* 40 CFR § 300.317(a) and (d) ("Safety of human life must be given the top priority during every response action.").  However, the Findings and Recommendation properly concluded that no safety concerns arose until the *Enola M* began to sink, after the allegedly negligent conduct had occurred.  Findings and Recommendation at 18-19.  The United States argues that safety considerations underlay Mack's decision to retain CCS and her refusal to allow CCS to patch the portholes.  However, this argument fails because those are not the actions plaintiff has challenged and for which the United States seeks immunity.  Rather, plaintiff challenges Mack's alleged failure to evaluate the hull, assess the effect of pumping fuel and of the tide and current on the vessel's stability, provide proper pumping equipment and an adequately trained crew, and other alleged failures surrounding Mack's conduct in pumping fuel out of the vessel.

The United States fails to explain how safety considerations underlay this alleged conduct.  The United States does not demonstrate how Mack weighed any safety concerns when she declined to de-water the vessel, as was allegedly suggested by CCS, before pumping the fuel out.  There is no argument, for example, that the de-watering methods suggested by CCS would have been unsafe.  Moreover, Mack admitted that she was not necessarily required to remove the fuel first.

As the Magistrate Judge acknowledged, the considerations referenced by the United States and Mack in defending their conduct involve professional judgments about salvaging and vessel stability, and the application of objective scientific or technological standards.  They do not implicate social, economic, or political policies.  Findings and Recommendations at 19.  The United States asserts that Mack's response was based on "numerous factors when determining the appropriate response, including, but not limited to, the structural integrity of the vessel, her condition, the fuel, the fire, the location, and the grounding."  Mack also considered the effect of the mud on the stability of the vessel when she decided not to cease pumping although the *Enola M* had taken on water.  Thus, this court agrees with the Findings and Recommendation that taken as true, the facts alleged show that Mack and the Coast Guard failed to adhere to accepted professional standards when implementing their decision to pump fuel out of the *Enola M*.  Mack's negligence, if any, arose from a misapplication of scientific and technological standards, not a balancing of policy considerations or safety concerns.

The court has reviewed the United States' other objections and finds them similarly without merit.  The United States' objection that safety precautions qualify as a policy judgment is unavailing, since the United States has failed to show that any of the challenged conduct was based on safety considerations.   Likewise, the court rejects the United States' argument that the Findings and Recommendation should have discussed whether Mack was bound by "competing policy considerations." *Whisnant*, 400 F.3d at 1182, n.3.  As explained above, the record viewed favorably to plaintiff indicates that Mack's conduct was grounded in her technical observations alone.

7       - ORDER

In sum, the Findings and Recommendation correctly concluded that the Coast Guard's actions in salvaging the *Enola M* were not the type of conduct that Congress intended to protect, since they were grounded in technical and scientific judgments rather than policy considerations. Therefore, the discretionary immunity exception does not apply, and the Findings and Recommendation properly denied the United States' Motion to Dismiss.

## **CONCLUSION**

For the reasons provided, Magistrate Judge Hubel's Findings and Recommendation [52] that recommends that defendant United States' Motion to Dismiss For Lack of Subject Matter Jurisdiction [26] should be denied is ADOPTED. The United States' Motion to Dismiss is DENIED.

IT IS SO ORDERED.

DATED this   23   day of October, 2006.


                                                        /s/ ANCER L. HAGGERTY  
                                                        Ancer L. Haggerty  
                                                        United States District Judge